# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDA VILLA, on behalf of R.A.B. (a minor),<br><br>    Plaintiff,<br><br> v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,<br>    Defendant.<br>_____/ | Case No. 1:22-cv-00067-SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1) |

## I.  INTRODUCTION

On January 17, 2022, Plaintiff Brenda Villa ("Plaintiff"), on behalf of her minor child R.A.B., filed a complaint under 42 U.S.C. § 1383(c) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.  FACTUAL BACKGROUND

On February 8, 2018, an application for SSI was protectively filed by Plaintiff on behalf of R.A.B., a child under the age of 18. (Administrative Record ("AR") 15, 59, 70, 215, 221) (R.A.B.

---

[1] The parties have consented to the jurisdiction of the U.S. Magistrate Judge. (*See* Doc. 13.)

was born on August 10, 2009).) The application alleged that R.A.B. became disabled on February 1, 2016, due to attention deficit hyperactivity disorder (ADHD), defiant and aggressive behaviors, lack of impulse control, difficulty with memory, and "constant bathroom accidents." (AR 15, 59–60, 70–71, 81, 90, 215, 221.)

**A.     Relevant Evidence of Record[2]**

    **1.     Medical Evidence**

R.A.B. experienced issues focusing at school and was diagnosed with ADHD. (AR 678.) In April 2016, R.A.B.'s teacher indicated there was improvement as to his focus and physical behavior issues when he began taking medication. (AR 678.) His teacher described how R.A.B. was "making progress and [was] responsive to classroom interventions." (AR 678.) At the time, R.A.B. did not qualify for special education. (AR 678.) School records noted that although R.A.B.'s reading was slightly below grade level, he was "right where he should [be] academically." (AR 678.)

Mental health treatment progress notes from Turning Point Visalia Youth Services indicated continued improvement of R.A.B.'s symptoms with medication. For example, at a session in September 2018, R.A.B. shared that without his ADHD medication, he would not be able to sit still in class and focus. (AR 723.) R.A.B. noted that when he is experiencing his ADHD symptoms, he is often forgetful, impulsive, and off task. (AR 723.) In October 2018, R.A.B. noted he felt calmer when taking his medications, although one side effect of the medication was reduced appetite. (AR 706.) In November 2018, R.A.B. was still taking his medications and described how during school hours, he was able to focus and pay attention in class and completed his class work. (AR 697.)

In December 2018, though R.A.B. appeared slightly fidgety, he reported continued compliance with his medication. (AR 683.) The provider noted that R.A.B. was able to sit still, participate in the session, listen attentively when spoken to, and share about how frequently he was off task when he was at school. (AR 683.) At another session in December 2018, R.A.B. admitted that when he was not taking medication, he needed to use coping skills to stay on task. (AR 795.) Specifically, R.A.B. explained that after school, he became easily distracted and had difficulty

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

2

paying attention when trying to complete his schoolwork. (AR 795.) Treatment notes throughout 2019 indicated that R.A.B. was able to focus in class and most of the day when he was compliant with his medication regimen. (*See* AR 737, 767, 779, 787.)

### 2. Teacher's Assessment

R.A.B.'s third grade teacher, Emilee Washington, completed an assessment titled "Child Symptom Inventory – 4: Teacher Checklist." (AR 297–300.) Ms. Washington noted that R.A.B.'s current academic performance as to reading and arithmetic were at the appropriate grade level, but R.A.B.'s writing was one to two years below grade level. (AR 297.) Ms. Washington also reported that when R.A.B. was not taking his medications, he "very often" has difficulty paying attention to tasks or play activities, is easily distracted by other things, and has difficulty remaining seated when asked to do so. (AR 297–98.) Ms. Washington further reported that when R.A.B. was not taking his medications, he "often" does not seem to listen when spoken to directly, has difficulty following through with instructions and finishing things, has difficulty organizing tasks and activities, fidgets with his hands or feet and squirms in his seat, blurts out answers to questions before they have been completed, and has difficulty awaiting his turn in group activities. (AR 297–98.)

### 3. Opinion Evidence

In May 2018, R.A.B. and Plaintiff attended a consultive psychological examination with Steven C. Swanson, Ph.D. (AR 524–30.) Plaintiff reported that R.A.B. has a history of aggressive and antisocial behavior. (AR 525.) She described how R.A.B. has a bad temper, can be defiant with teachers, and has nearly been suspended from school several times. (AR 525.) Dr. Swanson administered the Wechsler Intelligence Scale for Children – 4th Edition (WISC-IV), and found that R.A.B. fell within the average range of intellectual ability. (AR 526–27.) Dr. Swanson determined that R.A.B.'s WISC-IV results indicated he could be expected to perform academically at a level that was consistent with same-aged peers. (AR 527.) Dr. Swanson opined that R.A.B. had the ability to understand and respond to increasingly complex requests, instructions, or questions in an age-appropriate manner. (AR 528.) Dr. Swanson also opined that R.A.B. appeared to have the ability to communicate by understanding, initiating, and using language and to respond to stimuli in a mostly age-appropriate manner. (AR 528.) Dr. Swanson further found that R.A.B. appeared to have

the ability to socially integrate with peers and adults in a mostly age-appropriate fashion, "though he may be aggressive and exploitative of others." (AR 528.)

R.A.B. and Plaintiff returned to see Dr. Swanson in December 2019. (AR 591–96.) R.A.B. reported feeling normal and happy most days, and Dr. Swanson noted that R.A.B. maintained satisfactory attention and concentration. (AR 593.) Dr. Swanson administered the Wechsler Intelligence Scale for Children – 5th Edition (WISC-V), and found that R.A.B. fell within the borderline range of intellectual functioning. (AR 593–94.) Dr. Swanson determined that R.A.B.'s WISC-V results indicated that he could be expected to perform academically at a level somewhat lower than same-aged peers. (AR 594.) Aside from these findings, Dr. Swanson's opinion did not largely differ from his prior opinion in May 2018. (*See* AR 594–95.)

In December 2019, R.A.B. and Plaintiff also attended a consultive examination with Birgit Siekerkotte, M.D. (AR 598–602.) Plaintiff stated R.A.B. had accidents with bowel movements and he was aggressive and defiant. (AR 598.) Dr. Siekerkotte noted that R.A.B. was in regular education "where he is doing well." (AR 599.) Plaintiff explained that R.A.B. has tantrums every day, has episodes where he hits himself once or twice a week, hits others (though not at school), and once tried to suffocate his sister by putting a pillow over her face. (AR 599.) Plaintiff also reported that R.A.B. is supposed to do household chores, but he often needs reminders to do so. (AR 599.) Dr. Siekerkotte opined that R.A.B. had no limitations as to acquiring and using information, attending and completing tasks, moving about and manipulating objects, and caring for self. (AR 601–02.) Dr. Siekerkotte further opined that R.A.B. had marked limitations when interacting and relating to others due to behaviors such as trying to suffocate his sister and hitting others, and R.A.B. had less than marked limitation as to health and physical wellbeing due to accidents with bowel movements. (AR 601–02.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on June 13, 2018, and again on reconsideration on November 30, 2018. (AR 66–69; AR 77–80, 85–88, 90–94.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 95–100.) The ALJ conducted a hearing on May 21, 2021. (AR 30–47.) Plaintiff appeared at the hearing

4

with R.A.B. and her counsel, and gave testimony. (AR 39–45.) R.A.B. also testified. (AR 36–40.)

In a decision dated June 16, 2021, the ALJ found that R.A.B. was not disabled. (AR 15–23.) Plaintiff sought review of this decision before the Appeals Council, which denied review on November 18, 2021. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

### III.     SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

### IV.     APPLICABLE LAW

A child (defined as an individual under the age of eighteen) is considered disabled for purposes of disability benefits if they are unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (quoting 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)); *Lowe v. Berryhill*, No. 1:17-cv-00349-SKO, 2018 WL 2096264, at *7 (E.D. Cal. May 7, 2018). The impairment or impairments must "result[] in marked and severe functional limitations, and which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months." *Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000) (quoting 42 U.S.C. § 1382c(a)(3)(C)(i)).

The ALJ must undertake a three-step sequential analysis in the process of evaluating a child's disability. In the first step, the ALJ must determine whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924. If not, in the second step, the ALJ must determine whether the child has a severe impairment or a combination of impairments causing marked functional limitations. *Id*. If so, in the third step, the ALJ must determine whether the child has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id*. If so, the child is found to be disabled, assuming the twelve-month duration requirement is also met. *Id*.

Step three encompasses two analytical steps. First, it must be determined whether the claimant's impairment meets or medically equals a Listing. Second, the impairment must also satisfy all the criteria of the Listing. 20 C.F.R. § 416.925(d). The mere diagnosis of an impairment in the Listing is insufficient, without more, to sustain a finding of disability. *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990); *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985). If the claimant does not meet or medically equal a Listing, they may still be considered disabled if an impairment results in limitations that "functionally equal the listings." 20 C.F.R. § 416.926a(a).

In determining whether the severe impairment functionally equals a Listing, the ALJ must assess the claimant's functioning in six "domains." The "domains" are broad areas of functioning that are "intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id*. To "functionally equal" the listings, the impairment must result in "marked" limitations in two domains or an "extreme" limitation in one domain. *Id*., § 416.926a(a), (d). In making this assessment, the ALJ looks at "how appropriately, effectively, and independently" the claimant preforms their activities "compared to the performance of other children [the claimant's] age who do not have impairments." *Id*., § 416.926a(b). In each domain, the regulations provide "age group descriptors" summarizing the typical functioning of

children in each group. The age groups include preschool children (age 3 to attainment of age 6), school-age children (age 6 to attainment of age 12), and adolescents (age 12 to attainment of age 18). *See, e.g.*, *id.*, § 416.926a(h).

A minor has a "marked" limitation in a domain if their impairment "interferes seriously" with their "ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). The regulations also provide that "marked" limitations means a limitation that is "more than moderate" but "less than extreme." *Id*. However, "extreme" limitation does not mean a "total lack or loss of ability to function." 20 C.F.R. § 416.926a(e)(3)(i).

The claimant bears the burden of establishing a *prima facie* case of disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995); *see* 20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or disabled"). This burden requires a showing that the minor has an impairment listed in the regulations, and that they have met the duration requirement. *See* 20 C.F.R. §§ 416.924(a), 416.924(d)(2).

## V.    THE ALJ'S DECISION

The ALJ conducted the three-step childhood disability analysis set forth in 20 C.F.R. § 416.924. (AR 16–23.) The ALJ noted that R.A.B. was "a school-age child" on February 8, 2018, the date the application was filed, is "currently a school-age child," and that he had not engaged in substantial gainful activity since the application date (step one). (AR 16.) At step two, the ALJ found that R.A.B. had the severe impairments of ADHD; oppositional defiant disorder (ODD); adjustment disorder with mixed disturbance of emotions and conduct; and borderline intellectual functioning. (AR 16.) The ALJ further found that R.A.B. had no impairment or combination of impairments that met, medically equaled, or functionally equaled the severity of the Listings, in that they resulted in either marked limitations in two domains of functioning or extreme limitation in one domain of functioning (step three). (AR 16–22.) In reaching this finding, the ALJ considered the relevant medical evidence and opinions, Plaintiff's and R.A.B.'s hearing testimony, and school records. (AR 17–22.) Although the ALJ recognized that R.A.B.'s impairments "could reasonably be expected to produce the alleged symptoms[,]" they rejected the subjective testimony in the record as "not entirely consistent with the medical evidence and other evidence in the record." (AR 18.)

The ALJ considered R.A.B.'s functioning in terms of six domains, including (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for himself, and (6) health and physical well-being. (AR 17–22.) The ALJ concluded that R.A.B. was not disabled. (AR 22.)

## VI.  DISCUSSION

Plaintiff contends the ALJ erred by finding that R.A.B. had less than a marked limitation in the domain of attending and completing tasks. (Doc. 18 at 10–14.) Plaintiff further asserts that the ALJ improperly failed to consider whether R.A.B. was entitled to a "closed period" of disability. (*Id*. at 14–15.) The Acting Commissioner responds that substantial evidence supports the ALJ's assessed functional limitations and R.A.B. was not eligible for a closed period of benefits. (Doc. 19 at 6–12.) The Court addresses the parties' contentions below, and finds that reversal is not warranted.

**A.   Substantial Evidence Supports the ALJ's Finding that R.A.B. Had Less Than a Marked Limitation as to the Domain of Attending and Completing Tasks**

**1.   Legal Standard**

The ALJ is responsible for determining functional equivalence after consideration of all the evidence submitted. 20 C.F.R. § 416.926a(n). The regulations list the information and factors that will be considered in evaluating whether a child's impairment functionally equals a Listing. *Id*., §§ 416.926a, 416.924a. In making this determination, the Commissioner considers information from medical sources as well as nonmedical sources, such as observations of school personnel and teachers, to determine how the child is functioning at school on a day-to-day basis compared to other children of the same age who do not have impairments. *See* 20 C.F.R. §§ 416.924a(a)(2)(iii); 416.926a(e)(4)(ii).

In the domain of "attending and completing tasks," the ALJ assesses how well the child can focus and maintain attention, and how well the child can begin, carry through, and finish activities, including the pace at which the child performs activities and the ease of changing activities. 20 C.F.R. § 416.926a(h). Claimants may be limited in attending and completing tasks if they are (1) easily startled, distracted, or overreactive to sounds, sights, movements, or touch; (2) slow to

focus on, or fail to complete activities of interest; (3) repeatedly sidetracked from activities or frequently interrupt others; (4) easily frustrated and give up on tasks, including ones they are capable of completing; and (5) require extra supervision to stay engaged in an activity. *Id.*, § 416.926a(h)(3)(i)–(v). The regulations summarize the typical functioning of school-age children with regard to this domain as follows:

> When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. § 416.926a(h)(iv).

### 2. Analysis

Here, the ALJ set forth their findings as to six domains in the following manner:

> I find that the claimant has:
> - **less than a marked** limitation in acquiring and using information;
> - **less than a marked** limitation in attending and completing tasks;
> - *a marked* limitation in interacting and relating with others;
> - **no** limitation in moving about and manipulating objects;
> - **less than a marked** limitation in the ability to care for himself/herself; and
> - **no** limitation in health and physical well-being.

(AR 17.) The ALJ then summarized the relevant medical evidence (AR 18–22) and concluded as follows:

> Overall, the record does not support a finding of marked limitations in any domain besides interacting and relating with others. Educational records do reflect that the claimant is below grade-level in some subjects, but is near expectation in most areas (Ex. 10E, 22E, 27E). The claimant is not in special education and records reflect that when adhering to his medication regimen he is better able to remain on task. Therapy sessions do reflect some fidgetiness, but that the claimant is consistently able to remain focused and engaged in sessions.

(AR 22.)

As a preliminary matter, Plaintiff contends the ALJ erred by failing to discuss the specific

9

elements of the domain of attending and completing tasks. (*See* Doc. 18 at 11–12.) Plaintiff asserts that the ALJ's analysis is inadequate because the ALJ merely recited the evidence and concluded that the overall record did not support a finding of marked limitations in any domain besides interacting and relating to others. (*Id*. at 11.) Plaintiff, however, "offers no case law to support [her] argument that the ALJ was required to specifically discuss every individual component of [their] evaluation of this domain." *Bryan ex rel. T.R.J. v. Colvin*, No. 14–CV–5043–FVS, 2015 WL 4644316, at *8 (E.D. Wash. Aug. 4, 2015).

The ALJ's decision also makes clear that the ALJ did more than merely recite the record evidence and conclude that the evidence did not support a finding of marked limitations in any domain besides interacting and relating to others. In setting forth the finding as to the six domains, the ALJ specifically explained that R.A.B. was better able to remain on task when adhering to his medication regimen (AR 22), and Plaintiff agrees that there was improvement after R.A.B. began taking medication (*see* Doc. 18 at 12–14). Indeed, the ALJ's summary of the medical evidence preceding this finding reflects improvement of R.A.B.'s symptoms with medication. The nature of the ALJ's responsibility is to interpret the evidence of record, including medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). For example, R.A.B.'s third grade teacher, Ms. Washington, indicated on her assessment that when Plaintiff is not taking his medications, he very often has difficulty paying attention to tasks or play activities, is easily distracted by other things, and has difficulty remaining seated when asked to do so, and he often has difficulty following through with instructions and finishing things, blurts out answers to questions before they have been completed, and has difficulty awaiting his turn in group activities. (AR 297–98.) Another teacher noted there was improvement as to R.A.B.'s focus and physical behavior issues when he began taking medication. (AR 678.) "[A] failure to take medications consistently can explain a failure of functioning and warrant a conclusion that the claimant is not disabled." *Trayvaughan P. v. Astrue*, No. 1:08–cv–01774–SMS, 2009 WL 2513481, at *8 (E.D. Cal. Aug. 17, 2009).

Likewise, progress notes repeatedly indicated that R.A.B.'s ability to focus and stay on task improved with medication. (*See, e.g.,* AR 683, 697, 706, 723, 737, 767, 779, 787, 795.) "Generally, an impairment that can reasonably be controlled by medication cannot serve as a basis for finding a

disability." *Trayvaughan P.*, 2009 WL 2513481, at *8; *see also Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming denial of benefits and noting that claimant's impairments were responsive to treatment with medication).

Furthermore, both consultive examiners opined that R.A.B. generally had minimal functional limitations. In May 2018, Dr. Swanson found that R.A.B. fell within the average range of intellectual ability and his WISC-IV results indicated he could be expected to perform academically at a level that was ***consistent*** with same-aged peers. (AR 526–27.) Dr. Swanson also opined that R.A.B. appeared to have the ability to communicate by understanding, initiating, and using language and to respond to stimuli in a ***mostly*** age-appropriate manner. (AR 528.) Dr. Swanson assessed R.A.B. again in December 2019 and found that R.A.B. fell within the borderline range of intellectual functioning. (AR 593–94.) Dr. Swanson determined that R.A.B.'s WISC-V results reflected he could be expected to perform academically at a level that is ***somewhat lower*** than same-aged peers. (AR 594.) In December 2019, Dr. Siekerkotte also indicated that R.A.B. was doing well in regular education, and opined that R.A.B. had ***no*** limitations as to acquiring and using information, attending and completing tasks, moving about and manipulating objects, and self-care. (AR 599, 601–02.)

Though the ALJ found the opinions of both consultive examiners to be "persuasive" (which Plaintiff does not challenge), the ALJ still assessed a more restrictive functional limitation than those opined by the consultative examiners by finding less than a marked limitation in attending and completing tasks. (*See* AR 17, 22.) In evaluating R.A.B.'s functional equivalence at step three, the ALJ, as they are charged to do, interpreted and weighed the evidence in conjunction with other longitudinal evidence in the record, such as consistent evidence showing that R.A.B.'s symptoms were effectively controlled with medication. *See, e.g.*, *Trayvaughan P.*, 2009 WL 2513481, at *8 ("considering Plaintiff's ability to function in the educational context in which his impairment manifested limitations, and in light of the woeful absence of treatment and admitted lack of consistent medication, the record was such that it was up to the ALJ to engage in the initial weighing of the evidence, assessment of the importance and frequency of the limitations and activities,

11

consideration of the effect of medication and treatment and the lack thereof, and evaluation of the relative weight of other conditions and factors."). In doing so, the ALJ proceeded according to correct legal standards and arrived at conclusions supported by substantial evidence. *Id.*; *see, e.g., Martinez on behalf of RJK III v. Berryhill*, No. 17-cv-01233-EDL, 2018 WL 1989557, at *8 (N.D. Cal. Feb. 26, 2018) (relying on evidence in the record and opinions from state agency reviewing doctors to find that plaintiff had less than marked limitations in the domain of attending and completing tasks).

Plaintiff further contends that the ALJ improperly rejected the statements of R.A.B.'s third grade teacher, Ms. Washington, without offering any legally sufficient reasons. (Doc. 18 at 15.) Though the regulations provide that the ALJ considers information from nonmedical sources, such as observations of school personnel and teachers, to determine whether a child's impairment functionally equals a Listing, 20 C.F.R. §§ 416.924a(a)(2)(iii); 416.926a(e)(4)(ii), the ALJ is not required to give such information "the same weight as information from an acceptable medical source." *Vasquez ex rel. S.R.A. v. Astrue*, EDCV 08–00449 AJW, 2009 WL 1444728, at *6 (C.D. Cal. May 19, 2009) (citing *Gomez v. Chater,* 74 F.3d 967, 970–971 (9th Cir. 1996) (holding that the regulations permit the Commissioner to give "less weight" to opinions from "other sources")).

Moreover, an ALJ need not necessarily articulate the reasons to discount lay witness statements under the revised regulations. *McNabb v. Comm'r of Soc. Sec.*, No. 1:22-cv-01055-EPG, 2023 WL 4087639, at *6 (E.D. Cal. June 20, 2023) (citing *Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630, at *3 n.1 (9th Cir. Dec. 27, 2022) ("It is an open question whether ALJs are still required to consider lay witness evidence under the revised regulations, although it is clear they are no longer required to articulate it in their decisions.")); *Neri v. Comm'r of Soc. Sec.*, No. 1:21-cv-01235-SAB, 2022 WL 16856160, at *7 (E.D. Cal. Nov. 10, 2022) (opining that, under the revised regulations, an ALJ must consider, but not necessarily articulate how, the ALJ considered lay testimony, and concluding that, in any event, the result would be the same if the germane-reasons standard applied).

Ultimately, the Court need not resolve this dispute. The ALJ evaluated Ms. Washington's assessment in conjunction with the other evidence in the record and concluded that R.A.B. had less

than a marked limitation in the domain of attending and completing tasks.  The ALJ "was not obliged to adopt [Ms. Washington's] assessment of the functional severity of [R.A.B.'s] impairments in each domain."  *Vasquez ex rel. S.R.A.*, 2009 WL 1444728, at *7.  Where the ALJ's assessment of the degree of functional impairment differed from that suggested by Ms. Washington, as discussed above, the ALJ supported the conclusions with substantial evidence in the record, including evidence that R.A.B.'s symptoms were effectively treated with medical and the opinions of the two consultive examiners.  *Id.*; *see also Norman ex rel. M.K. v. Colvin*, CV–12–3085–FVS, 2013 WL 5724138, at *6 (E.D. Wash. Oct. 21, 2013) (finding substantial evidence supported the ALJ's decision that the claimant suffered only a less than marked limitation in the domain of attending and completing tasks where the teacher's opinion stood in contrast to other relevant evidence in the record).

To the extent Plaintiff is advocating for an alternative interpretation of the evidence in the record, the Court will not second guess the ALJ's reasonable interpretation, even if such evidence could give rise to inferences more favorable to Plaintiff.  *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To do as Plaintiff asks would require the Court to independently weigh the evidence, thereby substituting its judgment for that of the ALJ.  This it cannot do.  *See Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ.").

In sum, the Court finds that substantial evidence supports the ALJ's finding that R.A.B. had less than a marked limitation in attending and completing tasks.  Plaintiff may disagree with this conclusion, but the Court must nevertheless uphold the ALJ's determination because it is a rational interpretation of the evidence.  *See Ford v. Saul*, 950 F.3d 1141, 1159 (9th Cir. 2020) ("Our review of an ALJ's fact-finding for substantial evidence is deferential"); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

**B.     The ALJ Did Not Err By Not Considering Whether R.A.B. Was Entitled to a Closed Period of Disability**

Plaintiff contends that the ALJ erred by failing to consider whether R.A.B. was entitled to a "closed period" of disability as to the time period from February 2016 to December 2018.  (Doc. 18 at 14–15.)  Plaintiff emphasizes that the assessment by R.A.B.'s third grade teacher, Ms.

1    Washington, falls within this time period. (*Id*.)

2         As explained above, the ALJ appropriately evaluated Ms. Washington's assessment along with the other evidence in the record and arrived at a nondisability finding supported by substantial evidence. *See Gonzales v. Colvin*, No. 1:13–cv–01976–SKO, 2015 WL 1020987, at *7 (E.D. Cal. Mar. 9, 2015) (declining to consider plaintiff's contingent argument that the ALJ should have credited an opinion as to plaintiff's functional limitations, and thus, plaintiff would have been entitled to a closed period of disability, because the Court found that the opinion was properly considered by the ALJ).

3         Moreover, even if the Court were to consider a closed period of disability from February 2016 to December 2018, the Court finds that substantial evidence from this period supports the ALJ's determination that R.A.B. was not disabled within the meaning of the Act during that time frame. The Act provides that a claimant's impairment or impairments must "result[] in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Merrill ex rel. Merrill*, 224 F.3d at 1085 (quoting 42 U.S.C. § 1382c(a)(3)(C)(i)). To obtain an closed period of disability, the evidence must show that (1) the claimant could not engage in substantial gainful activity for a continuous period of twelve months; (2) the disability ceased by the time of adjudication; and (3) the claimant met all the other eligibility requirements for benefits. *See* 20 C.F.R. §§ 404.1505(a), 416.905(a); *Broers v. Berryhill*, No. 1:16–cv–00202–SKO, 2017 WL 1427025, at *10 (E.D. Cal. Apr. 21, 2017); *see, e.g.*, *Roberts*, 66 F.3d at 182 (affirming the ALJ's finding that claimant was not disabled due to obesity where claimant failed to carry her burden of showing she met the duration requirement).

4         Here, the evidence fails to demonstrate that R.A.B. had disabling limitations as a result of his impairments from February 2016 to December 2018. *See Little v. Berryhill*, No. 1:16-cv-00846-SKO, 2017 WL 3601494, at *8 (E.D. Cal. Aug. 22, 2017). As discussed above, the ALJ sufficiently addressed the evidence from this alleged closed period in their decision and reached a reasonable determination that the evidence did not warrant a finding that R.A.B. was disabled. For example, in April 2016, R.A.B.'s teacher indicated there was improvement as to his focus and physical

behavior issues when he began taking medication. (AR 678.) School records around this time noted that though R.A.B.'s reading was slightly below grade level, he was "right where he should [be] academically." (AR 678.) R.A.B. and Plaintiff attended a consultive psychological examination with Dr. Swanson in May 2018, who found that R.A.B. fell within the average range of intellectual ability. (AR 526–27.) Dr. Swanson determined that R.A.B.'s WISC-IV results indicated he could be expected to perform academically at a level that was consistent with same-aged peers, and that R.A.B. had the abilities to behave in a mostly age appropriate manner. (AR 527–28.) And, progress notes during this time period repeatedly indicated that R.A.B.'s ability to focus and stay on task improved with medication. (*See, e.g.,* AR 683, 697, 706, 723, 795.)

The foregoing evidence fails to demonstrate that R.A.B. had disabling limitations for a period of twelve months or greater within the limited time frame that Plaintiff requests the ALJ be ordered to reconsider. *See Felton v. Colvin*, No. 2:15-cv-2315-CKD, 2016 WL 6803680, at *5 (E.D. Cal. Nov. 17, 2016). Accordingly, because the ALJ's evaluation of the evidence and findings that R.A.B. did not suffer an impairment for a continuous period of twelve months is supported by substantial evidence, it was not error for the ALJ to not consider R.A.B.'s eligibility for a closed period of disability. *Little*, 2017 WL 3601494, at *9; *see, e.g.*, *Felton*, 2016 WL 6803680, at *5 ("The ALJ carefully and fully addressed this evidence in [their] decision and reached a reasonable determination that it did not warrant a finding that plaintiff was disabled, not only during the closed period plaintiff now contests, but throughout the entire course of the relevant period."); *accord Laib v. Astrue*, No. CV–09–0142–CI, 2010 WL 2218294, at *5 (E.D. Wash. May 26, 2010); *see also Rosales v. Colvin*, No. CV–12–1550–PHX–GMS, 2013 WL 1410387, at *4–5 (D. Ariz. Apr. 8, 2013) (finding the ALJ did not err in failing to consider a closed period of disability where the evidence in the record did not support a conclusion that plaintiff was disabled during the alleged closed period).

## I.   CONCLUSION AND ORDER

After consideration of Plaintiff's and the Acting Commissioner's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is

15

therefore AFFIRMED.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

| Dated: | **September 20, 2023** | /s/ *Sheila K. Oberto* |
|---|---|---|
| | | UNITED STATES MAGISTRATE JUDGE |